UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:05-CV-37; 1:03-CR-185 |
| | ) | Collier |
| WILLIAM JEFFREY WILSON | ) | |
| | ) | |

**MEMORANDUM**

Defendant William Jeffrey Wilson ("Wilson" or "defendant") moves to vacate, set aside, or correct his conviction and sentence pursuant to 28 U.S.C. § 2255 (Court File No. 2). Wilson pleaded guilty to counts one and six of a seven-count indictment. Wilson pleaded guilty in count one to violating 21 U.S.C. §§ 846 and 841(b)(1)(C), attempt to manufacture a methamphetamine, a Schedule II controlled substance. Wilson pleaded guilty in count six to violating 21 U.S.C. § 843(a)(6) and 18 U.S.C. § 2, possession of equipment and chemicals used to manufacture methamphetamine. On January 9, 2004, Wilson was sentenced to the custody of the United States Bureau of Prisons for a total imprisonment term of fifty-seven (57) months on each of counts one and six, to be served concurrently. [1]

---

[1] Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), there is a one-year statute of limitation for filing a § 2255 motion. *See* 28 U.S.C. § 2255. Wilson's judgment was entered on January 27, 2004, and he had ten (10) days, until February 6, 2004, to file a notice of appeal. When a § 2255 movant does not pursue a direct appeal to the court of appeals, his conviction becomes final on the date on which the time for filing such appeal expired. *Sanchez-Castellano v. United States*, 358 F.3d 424, 425 (6th Cir. 2004). Therefore, the one-year statute of limitations began to run on February 6, 2004. A motion filed by a prisoner is deemed filed when given to the prison authorities for mailing. *In re Sims,* 111 F.3d 45, 47 (6th Cir. 1997), *citing Houston v. Lack,* 487 U.S. 266, 270-71 (1988); *See* Rule (C) FED. R. APP. PROC. Although Wilson did not sign his § 2255 motion prior to filing it, he simultaneously filed a motion to proceed *in forma pauperis*, which reveals Wilson signed the *ifp* motion on January 26, 2005, prior to the expiration of the one-year statute of limitation for filing his § 2255 motion. Therefore, Wilson's motion is treated as timely filed on January 26, 2005.

Because it plainly appears from the § 2255 motion and file, and Wilson's criminal file that he is not entitled to any relief, the United States Attorney is not required to file an answer in this matter. For the reasons which follow, the Court has determined a hearing is not necessary and concludes that the § 2255 motion lacks merit and will be **DENIED**. Wilson is not entitled to any relief under § 2255.

## I. Standard of Review

This Court must vacate and set aside the sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . . ." 28 U.S.C. § 2255. Under Rule 4 of the RULES GOVERNING SECTION 2255 PROCEEDINGS IN THE UNITED STATES DISTRICT COURTS, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveals the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the Court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo,* 454 F.2d 52, 53 (6th Cir. 1972);[2] *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green v. Wingo,* 454 F.2d at 53; *O'Malley,* 285 F.2d at 735

---

[2] *Green v. Wingo* involves a petition for the writ of habeas corpus, pursuant to 28 U.S.C. § 2254, with respect to a state conviction. Nevertheless, §§ 2254 and 2255 are counterparts of each other and the law applicable to one generally applies to the other. *Davis v. United States,* 417 U.S. 333, 343-44 (1974); *Metheny v. Hamby,* 835 F.2d 672, 673-74 (6th Cir. 1987), *cert. denied,* 488 U.S. 913 (1988).

(citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts, is without legal merit. *Loum v. Underwood,* 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson,* 940 F. Supp. 167, 171 (W.D. Tenn. 1996). Wilson has failed to present any facts which establish that his sentence is subject to collateral attack under § 2255.

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Reed v. Farley,* 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Hill v. United States,* 368 U.S. 424, 428 (1962); *Clemmons v. Sowders,* 34 F.3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas,* 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States,* 582 F.2d 1039, 1041 (6th Cir.), *cert. denied,* 439 U.S. 988 (1978). To warrant relief for a nonconstitutional error requires a showing of a fundamental defect in the proceedings that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley,* 512 U.S. at 354; *Grant v. United States,* 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996).

"On collateral review, a trial error is deemed harmless unless it had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Fair v. United States*, 157 F.3d 427, 430 (6th Cir., 1998), *quoting Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993). "It is a 'well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal.'" *Fair,* 157 F.3d at 430, *quoting United States v. Frady* 456 U.S. 152, 166 (1982). A defendant must show a "fundamental defect" in the proceedings which

necessarily results in a complete miscarriage of justice or an egregious error which violates due process in order to prevail under 28 U.S.C. § 2255. *See Fair v. United States*, 157 F.3d at 430, *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994).

Further, a § 2255 motion is not a substitute for a direct appeal and it cannot do service for an appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *United States v. Timmreck*, 441 U.S. 780, 784 (1979); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996); *United States v. Walsh*, 733 F.2d 31, 35 (6th Cir. 1984). Challenges that should have been raised on direct review but were not raised, will not be addressed by habeas courts unless cause is shown for the tardy challenge and "actual prejudice" resulting from the error is demonstrated, *United States v. Frady*, 456 U.S. at 167-68; or that the movant is actually innocent of the crime. *See Bousley v. United States*, 523 U.S. 614 (1998).

## II. Factual Background

A sealed indictment was returned by a Federal grand jury on August 26, 2003, charging in Count 1 that on or before January 30, 2003, in the Eastern District of Tennessee, defendant Wilson attempted to manufacture methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). Count 6 charged that on or about August 14, 2003, in the Eastern District of Tennessee, Wilson, aided and abetted by others, possessed chemicals and equipment used to manufacture methamphetamine in violation of 21 U.S.C. § 843(a)(6) and 18 U.S.C. § 2.

The facts relevant to Counts1 and 6 are taken from the presentence investigation report:

> 12. On January 30, 2003, Meigs County Deputies executed a search warrant at the defendant's residence in Meigs County, Tennessee. Previous to the search warrant being executed, the defendant was caught purchasing methamphetamine manufacturing materials at an Auto

> Zone in Athens, Tennessee. At that time, the defendant and McMinn County officers got into a "scuffle," and the officers decided to serve the warrant at that time. Seized as a result of the search were numerous items used in manufacturing methamphetamine. These items included muriatic acid, rubber tubing, used coffee filters, red phosphorous (no known amounts), acetone, ephedrine pills (no known amounts) and numerous other items used to make methamphetamine. Several substances were submitted to the TBI crime laboratory for analysis; these items included a liquid, a powder and residue. The powder substance was determined to be **4.9 grams of methamphetamine**. The defendant was not at home at the time of the search. (emphasis in original)

14. On August 14, 2003, a caseworker with the Tennessee Department of Children's Service (DCS), along with law enforcement officers, went to the home of Timothy and Alicia Green in Meigs County, Tennessee, to investigate allegations of child neglect. The defendant was present at the time when caseworkers arrived. As the officers arrived, the defendant attempted to leave; he was detained. The defendant spoke with officers briefly and the officers asked him to remain, but he did not comply. Inside the residence, officers found a methamphetamine laboratory; items found included brake cleaner, used coffee filters, plastic tubing, digital scales, and other items associated with the manufacturing of methamphetamine. Young children were also present in the home. According to the DCS caseworker's case notes, there was a "fog" in the bathroom that was somewhat yellowish in color. There was a jar with a white substance under the bathroom sink. The case worker asked Mr. Green to pick up a pile of clothes in the bathroom floor so that she could see what was underneath them. The caseworker saw aluminum foil, acid and brake cleaner under the clothes. The children, a girl (age 5) and a boy (age 14), were taken to the hospital for an exam; they showed no symptoms of "exposure" and were released from the hospital. The parents of the children agreed to comply with DCS safety plan of having the children stay with their grandmother, with no unsupervised visits with their parents.

## III. <u>Analysis</u>

In his motion to vacate, set aside or correct, Wilson asserts two claims. First, he contends his guilty plea was involuntary because he did not understand that he was waiving his Sixth Amendment right to a jury trial. In his second claim, Wilson assets that the Court improperly

sentenced him in violation of *Blakely v. Washington*, 124 S.Ct. 2531 (2004) and *United States v. Booker*, 125 S.Ct. 738 (2005).

**1. Involuntary Plea**

Wilson contends his plea was involuntary because he did not understand that he was waiving his Sixth Amendment right to a jury trial. However, Wilson failed to provide any supporting facts to support his involuntary plea claim. Hence, he has inadequately pleaded this claim under Rule 2(b) of the RULES GOVERNING SECTION 2255 CASES IN THE UNITED STATES DISTRICT COURTS, which requires claims be plead with factual specificity. Wilson's claim fails to "set forth in summary form the facts supporting each of the grounds thus specified**."** Rule 2(b) of the RULES GOVERNING SECTION 2255 CASES IN THE UNITED STATES DISTRICT COURTS. Thus, Wilson's claim that his plea was involuntary because he did not understand that he was waiving his Sixth Amendment right to a jury trial will be **DISMISSED** for failing to set forth in summary form the facts supporting this claim. Rule 2(c) of the RULES GOVERNING SECTION 2255 CASES IN THE UNITED STATES DISTRICT COURTS.

However, for the sake of discussion, assuming Wilson's involuntary plea claim is adequately pleaded, he still would not be entitled to any § 2255 relief. Wilson did not appeal his conviction or sentence and neither of his two claims contain any reference to alleged ineffective assistance of performance on the part of his attorney. "With the exception of a claim of ineffective assistance of counsel, a defendant procedurally defaults a claim by failing to raise it on direct review." *Garnica v. United States*, 361 F. Supp.2d 724, 730 (E.D. Tenn. 2005), *citing Bousley v. United States*, 523 U.S. 614, 621 (1998). Wilson does not claim counsel was ineffective in his involuntary plea claim. Consequently, this claim is procedurally defaulted. A district court may address a procedurally

defaulted claim in a § 2255 motion only if the petitioner can demonstrate cause and prejudice for failing to raise the issue on direct appeal, *United States v. Frady*, 456 U.S. 152, 167-68 (1982), or "actual innocence." *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001). Wilson has done neither. Wilson has not attempted to demonstrate cause and prejudice nor actual innocence. Consequently, he is not entitled to any relief on this claim.

Nevertheless, the Court will proceed on the merits of Wilson's claim assuming he is asserting that counsel was ineffective for failing to inform him that by pleading guilty he was waiving his right to a jury trial. The burden is on Wilson to demonstrate that he did not understand the nature of the constitutional rights he was waiving, thus resulting in an involuntary guilty plea. *See Henderson v. Morgan*, 426 U.S. 637, 645 n. 13 (1976). Rule 11 of the *Federal Rules of Criminal Procedure* requires that the guilty plea process be precise to make certain a defendant pleading guilty understands the constitutional rights he is waiving and the consequences of his guilty plea, in addition to ensuring that the guilty plea is voluntary and knowingly entered into and that a factual basis exists for the crime to which defendant is pleading guilty. *See United States v. Goldbery*, 862 F.2d 101, 106 (6th Cir. 1988). Wilson has not provided any proof that his attorney or this Court failed to inform him that he was waiving his right to a jury trial or that his attorney or the Court failed to ensure that he understood he was waiving his right to a jury trial. The record before the Court reveals that Wilson was notified that he was waiving his right to a jury trial and he understood that he was doing so. The following colloquy took place during Wilson's rearraignment:

THE COURT: You have certain rights that are guaranteed to you by the United States Constitution. By pleading guilty, you waive or give up certain of these rights.

First of all, you are giving up the right to plead not guilty and to persist in your earlier not guilty plea.

You are giving up the right to a trial by jury.

. . .

Do you understand that by pleading guilty you will be giving up these rights?

THE DEFENDANT: Yes, sir.

THE COURT: If you plead guilty, there will not be a trial of any kind. Do you understand this?

THE DEFENDANT: Yes, sir.

. . .

THE COURT: It is the finding of the Court in the case of the United States versus William Wilson that the defendant is fully competent and capable of entering an informed plea and that his plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. His plea is therefore accepted, and he is now adjudged guilty of that offense.

(Rearraignment Transcript at 6-7, 15-16).

First, the plea agreement specifically states that Wilson wished to plead guilty which necessarily means there will not be a jury trial on the charges to which he pleads guilty. Second, the Court scrupulously follows an outlined procedure to insure that a defendant is notified of the specific constitutional rights he is waiving when taking a plea of guilty. This exchange confirms Wilson was informed he was waiving his right to a jury trial and he acknowledged, under oath, that he understood he was waiving his right to a jury trial. In taking Wilson's plea on October 23, 2003, the Court explained to him that by pleading guilty he would be waiving certain constitutional rights that are guaranteed by the United States Constitution. The Court specifically told Wilson he was giving up the right to a trial by jury and that if he pleaded guilty there would not be a trial of any kind. Thus, the Court told Wilson that a guilty plea would result in the loss of certain rights. Wilson

acknowledged he understood the rights he was waiving.

A criminal defendant is bound by his statement in response to the Court's inquiries when entering a plea of guilty and his responses carry a strong presumption of verity. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986), *cert. denied*, 479 U.S. 1017 (1986). The court followed the Rule 11 procedures when accepting Wilson's plea of guilty. Wilson has providing nothing more than a factually unsupported allegation with no explanation of why he did not inform the Court that he did not understand the guilty plea hearing. Consequently, Wilson is bound by his statements made under oath during the guilty plea. Wilson has not submitted any support for his assertion that he did not understand he was waiving his right to jury trial. Accordingly, Wilson's request for relief because his guilty plea was not voluntary will be **DENIED**.

**2. Improper Sentence**

Wilson asserts that the district court improperly sentenced him "in violation of his Sixth Amendment rights as interpreted by *Blakely v. Washington*, and *United States v. Booker*" when it enhanced his sentence by a preponderance standard. Wilson was sentence on January 9, 2004. At that time neither *Blakely v. Washington*, 124 S.Ct. 2531 (2004)(invalidating a Washington State criminal sentence because the facts supporting a sentence enhancement were neither admitted by the defendant nor found by a jury in violation of the Sixth Amendment right to a jury trial) nor *United States v. Booker*, 125 S.Ct. 738 (2005) (extending the holding of *Blakely* to the United States Sentencing Guidelines, the Supreme Court held the mandatory nature of the federal sentencing guidelines rendered them incompatible with the Sixth Amendment guarantee to the right to a jury trial), had been decided by the United States Supreme Court. At this time, none of the recent cases

addressing the Federal Sentencing Guidelines, including the two cases Wilson relies upon, have been held to be retroactively applicable to cases already final on direct review.

*Blakely* was decided on June 24, 2004, and *Booker* was decided on January 12, 2005. However, neither *Blakely* nor *Booker* announced that it was retroactively applicable. The Supreme Court's decision in *Schriro v. Summerlin*, 124 S.Ct. 2519 (2004),[3] indicates that it is unlikely that *Blakely* will be given retroactive effect in the future. The Court's research indicates that the majority of courts that have addressed this issue have determined neither *Blakely* nor *Booker* are applicable to cases that were final prior to the Supreme Court's decision in those cases and the Sixth Circuit has specifically determined *Booker* is not applicable on collateral review. *See Humphress v. United States*, 398 F.3d 855 (6th Cir. 2005) (*Booker's* rule does not apply retroactively in collateral proceedings); In *re Anderson* 2005 WL 123923 (11th Cir. Jan. 21, 2005) ("It follows that because *Booker*, like *Blakely* and *Ring*, is based on an extension of *Apprendi*, Anderson cannot show that the Supreme Court has made that decision [*Booker*] retroactive to cases already final on direct review."); *Hamlin v. United States,* 2005 WL 102959 (D.Me. Jan. 19, 2005) (interpreted *Booker* to apply only to cases on direct review); *Stevens v. United States*, 2005 WL 102958 (D.Me. Jan. 18, 2005) (concluded *Booker* should not be applied retroactively to cases where the claim was not raised on direct review); *United States v. Harp*, 2004 WL 1636251 (N.D. Iowa July 22, 2004) (collateral relief requested in light of *Blakely* denied); *United States v. Traeger*, 325 F.Supp.2d 860 (N.D. Ill., 2004) (concluded *Blakely* decision did not apply

---

[3] The Court determined their previous decision in *Ring v. Arizona*, 536 U.S. 584 (2002) where they held that a sentencing judge sitting without a jury may not find an aggravating circumstance necessary for the imposition of the death penalty because those circumstances must be found by a jury, was a procedural rule and consequently, did not apply retroactively to death penalty cases already final on direct review.

retroactively). Wilson has no viable claim under *Blakely* or *Booker*.

Neither *Blakely* nor *Booker* applies to persons such as Wilson, whose sentences became final prior to the *Blakely* and *Booker* decisions. Therefore, Wilson is not entitled to any § 2255 relief in this case. Accordingly, Wilson's § 2255 motion [Court File No.2] is **DENIED.**

An appropriate judgment will enter.

***/s/***
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**